UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES ex rel. TAMIKA : 
NOTTINGHAM, :
 :
and :
 :
COMMONWEALTH OF VIRGINIA, :
ex rel. TAMIKA NOTTINGHAM, :
 :
    Plaintiffs, :
 :
v. :     No. 4:11cv99
 :
DELORES FREEMAN THOMAS, :
 :
and :
 :
NEW SEASON CLINICAL SERVICES, :
LLC, :
 :
and :
 :
JANE DOES #1-99, Members of New :
Season Clinical Services, LLC, :
 :
    Defendants. :

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the court on the Plaintiffs' Motion for Summary Judgment seeking to recover treble damages and civil penalties.[1] Pls.' Joint Mot. Summ. J., (ECF No. 45). Qui tam[2] relator Tamika Nottingham ("Nottingham"), on behalf of the United States of America and

---

[1] Plaintiffs also have a pending motion for default judgment against New Season Clinical Services, LLC. (ECF No. 44). This report does not discuss the merits of the motion for default judgment because the relief recommended by this report would supersede the relief requested in the motion for default judgment.

[2] Under 31 U.S.C. § 3730, "[a] person [also known as the relator] may bring a civil action for a violation of section 3729 for the person and for the United States Government," and if in this qui tam action, "the

1

the Commonwealth of Virginia (collectively the "Government"), filed suit against Delores Freeman Thomas ("Thomas") and New Season Clinical Services, LLC ("New Season"), under the False Claims Act and the Virginia Fraud Against Taxpayers Act for false claims submitted to Medicaid.[3] Sealed Compl., (ECF No. 1-1). The United States and the Commonwealth of Virginia intervened in the matter, and filed a Joint Complaint against Thomas and New Season. Sealed Notices of Intervention, (ECF Nos. 27, 28); Pls.' Joint Compl., (ECF No. 31). In a separate criminal case, Thomas pled guilty to criminal charges stemming from the fraudulent conduct that forms the basis for this civil action. United States v. Thomas, No. 4:13cr90 (E.D. Va.) (ECF No. 7). The Government contends that Thomas's related conviction for health care fraud under 18 U.S.C. § 1347 precludes her from contesting liability in the present suit. Thomas does not dispute the material facts in this case, but asks for a hearing to determine the damages to be imposed against her. Def.'s Br., (ECF No. 47). This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons outlined below, the undersigned RECOMMENDS that the court GRANT IN PART Plaintiffs' motion for summary judgment with regard to liability and treble damages, but RESERVE ruling on an award of civil penalties pending an evidentiary hearing if requested by the Government.[4]

---

Government proceeds with the action, it shall have the primary responsibility for prosecuting the action." 31 U.S.C. § 3130(a)-(c).

[3] The court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because the state law claims "are so related to claims in the action within original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

[4] Plaintiffs filed an amended complaint adding Jane Does numbers 1-99, members of New Season, as defendants. Am. Joint Compl., (ECF No. 39). There is no indication that Plaintiffs have made any attempt to identify or serve these individuals. This report, therefore, recommends that the action against Jane Does numbers 1-99 be DISMISSED.

2

## I. STATEMENT OF FACTS

On June 15, 2011, Plaintiff-Relator Nottingham filed this <u>qui tam</u> action against Thomas and New Season to recover treble damages and civil penalties on behalf of the Government under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, and the Virginia Fraud Against Taxpayers Act ("VFATA"), Va. Code Ann. § 8.01-216.1 et seq., arising from Thomas's and New Season's submission of false claims to Medicaid. Sealed Compl., (ECF No. 1-1). Nottingham was an employee of New Season and was the original source of the allegations against Thomas and her company. <u>Id.</u> at 2. The undisputed facts in this case are set forth below.[5]

In July 2008, Thomas, through New Season, entered into an agreement to become a Medicaid provider for Medicaid-contracted Intensive In-Home therapy and Mental Health Support services. Commonwealth of Va. Mental Health Agreement, (ECF No. 46-1). Under this agreement, Medicaid paid New Season to provide counseling services to Medicaid recipients. (ECF Nos. 46-1, 46-4). Pursuant to Medicaid requirements, Thomas, through New Season, submitted pre-authorization documentation to the Keystone Peer Review Organization ("Keystone Peer Review") for evaluation and approval. (ECF No. 46-4, at 2-3). The documentation submitted to Keystone Peer Review explained why each recipient required New Season's services and qualified for reimbursement under Medicaid. <u>Id.</u> From about January 2010 to November 2011, Thomas, through New Season, submitted false claims to Medicaid for sixty-six Medicaid recipients. <u>Id.</u> at 1, 4.

On September 10, 2013, the United States filed a Criminal Information in this court, alleging that Thomas committed health care fraud by submitting false pre-authorization

---

[5] Thomas does not dispute liability in the present civil suit. Admitting the facts underlying her guilty plea estops her from denying the "essential elements" of this suit. 31 U.S.C. § 3731(e). The implications of § 3731(e)'s preclusive effect are discussed below.

documentation for sixty-six Medicaid recipients in violation of 18 U.S.C. § 1347. Criminal Information, (No. 4:13cr90 (ECF No. 1)). The Criminal Information alleged that Thomas, as owner and operator of New Season, received $1,505,173.00 in Medicaid benefit payments to which she was not entitled. Id. at 3-4. On September 30, 2013, a plea agreement between Thomas and the United States was filed with the court. Plea Agreement, (No. 4:13cr90 (ECF No. 7)). Thomas, after consultation with her attorney, stipulated that the statement of facts, which accompanied the plea agreement, was true and accurate, and that if the matter had proceeded to trial, the United States would have been able to prove the stated facts beyond a reasonable doubt. Statement of Facts, (No. 4:13cr90 (ECF No. 8)). In the statement of facts, Thomas admitted the following:

(1) Thomas owned and operated New Season, a Medicaid-provider located in Hampton, Virginia in the Eastern District of Virginia. Id. at 1-2.

(2) Medicaid is a program jointly funded by the federal and state governments, and Medicaid uses private providers for many mental health services. See generally id.

(3) Under an agreement between Thomas, acting on behalf of New Season, and Medicaid, Thomas received payment from Medicaid for Intensive In-Home therapy and Mental Health Support services. Id.

(4) Pursuant to Medicaid requirements, Thomas and New Season submitted pre-authorization documentation to explain why recipients required services from New Season. Following an evaluation by Keystone Peer Review, on behalf of Medicaid, New Season was authorized to bill and receive payment from Medicaid for those services. Id.

(5) From January 2010 to November 2011, Thomas "knowingly and willfully executed and attempted to execute a scheme and artifice to defraud the Virginia Medical Assistance

Program ("Medicaid")." Id. at 1. Specifically, Thomas acted "knowingly and willingly, and not because of accident, mistake, or other innocent reason." Id. at 4.

(6) By submitting false and fraudulent claims to Medicaid, Thomas was able to obtain payment from Medicaid for services that were not provided. As part of the fraudulent billing scheme, Thomas submitted and caused to be submitted "false and fraudulent prior-authorizations representing eligibility criteria and factors that had been embellished, exaggerated, or wholly invented to satisfy Medicaid's eligibility standards for IIH [Intensive In-Home] and MHS [Mental Health Support] services." Id. at 3.

(7) In total, Thomas submitted false and fraudulent prior-authorizations for sixty-six Medicaid recipients, misrepresenting that fifty-eight Medicaid recipients required Intensive In-Home therapy and eight Medicaid recipients required Mental Health Support services. Id. at 4.

In May 2014, Thomas was convicted and sentenced by the court to fifteen months of imprisonment, to be followed by three years supervised release, and ordered to pay a $25,000 fine and $1,505,173.00 in restitution. (No. 4:13cr90 (ECF No. 32)).

Following Thomas's conviction, the Government intervened in the present qui tam suit in September 2014. Sealed Notices of Election to Intervene, (ECF Nos. 27, 28). The joint complaint included two causes of action under the False Claims Act and five state law causes of action – two causes of action under the Virginia Fraud Against Taxpayers Act, one cause of action under the Virginia Fraud Statute, and causes of action for fraud and unjust enrichment.[6] Pls.' Joint Compl., (ECF No. 31). In March 2015, the Plaintiffs filed an amended complaint, alleging the same causes of action, but adding as defendants, Jane Does numbers 1-99, unknown

---

[6] Plaintiffs' motion for summary judgment seeks recovery for treble damages and civil penalties under the False Claims Act and the Virginia Fraud Against Taxpayers Act. Plaintiffs do not address the other state law claims set forth in their Amended Complaint, (ECF No. 39).

co-conspirators who conspired with Thomas and New Season. Pls.' Amended Joint Compl., (ECF No. 39).

The Government seeks a judgment: (1) holding Thomas and New Season liable under the False Claims Act and Virginia Fraud Against Taxpayers Act; (2) awarding damages equal to three times the amount of funds fraudulently obtained from Medicaid; and (3) awarding civil penalties as the court deems appropriate. Pls.' Mem. Supp. Joint Mot. Summ. J., (ECF No. 46). Thomas's criminal conviction precludes her from denying liability in the present civil action. Accordingly, this report recommends that the court grant Plaintiffs' motion for summary judgment on liability and damages and reserve ruling on an award of civil penalties.

## II. ANALYSIS

### A. The Summary Judgment Standard

Federal Rule of Civil Procedure 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.' " Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The party seeking summary judgment has the initial burden of informing the court of the basis of its motion and identifying materials in the record it believes demonstrates the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 322-25. When the moving party has met its burden to show that the evidence is insufficient to support the

6

nonmoving party's case, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see Anderson, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

B. **There Are No Genuine Disputes of Material Fact Regarding Thomas's Liability Because She Is Precluded From Denying Liability.**

The Government argues that both the False Claims Act and the Virginia Fraud Against Taxpayers Act preclude Thomas from denying liability in the present civil action because the present case and her prior criminal conviction for fraud involve the same transaction. Pls.' Mem. Supp. Joint Mot. Summ. J., (ECF No. 46). Thomas concedes that she is estopped from denying the facts alleged in the present case. Def.'s Br. Resp. Pls.'s Joint Mot. Summ. J., (ECF No. 47). Even though Thomas concedes that she is estopped from denying liability, this report evaluates the admissions she made in connection with her plea agreement and concludes they do prevent her from denying liability in the present civil action.

A criminal conviction's preclusive effect on future civil actions is well established. Under federal common law, collateral estoppel "applies where (1) the 'the identical issue' (2) was actually litigated (3) and was 'critical and necessary' to a (4) 'final and valid' judgment (5) resulting from a prior proceeding in which the party against whom the doctrine asserted had a

fully and fair opportunity to litigate the issue." McHan v. Comm'r Internal Revenue, 558 F.3d 326, 331 (4th Cir. 2009) (citing Collins v. Pond Creek Mining Co., 468 F.3d 213, 217 (4th Cir. 2006)). For the purposes of collateral estoppel, a judgment based on a guilty plea and a judgment based on a trial on the merits have the same preclusive effect. Williams v. Comm'r Internal Revenue, 498 Fed. Appx. 284, 291 n. 6 (4th Cir. 2012) (unpublished) (citing Blohm v. Comm'r, 994 F.2d 1542, 1554 (11th Cir. 1993)).

The False Claims Act codifies this principle of collateral estoppel at 31 U.S.C. § 3731(e). Under this provision:

> a final judgment rendered in of favor the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730.[7]

31 U.S.C. § 3731(e). Specifically, a defendant will be foreclosed from denying liability in any subsequent action that arises from the "same transaction as in the criminal proceeding." Id.; see, e.g., United States v. Karron, 750 F. Supp. 2d 480 (S.D.N.Y. 2011) (finding that the defendant in a False Claims Act suit was precluded from denying liability for false statements in a subsequent civil action when he was previously convicted of fraud for those same false statements); United States v. Eghbal, 475 F. Supp. 2d 1008, 1013-16 (C.D. Ca. 2007) (holding that there was no genuine issue of material fact with regard to liability under the False Claims Act because the defendants' prior convictions and their admissions in their plea agreements established that their false statements caused the Government "to pay out money"); United States v. Szilvagyi, 398 F.

---

[7] Although the Government enumerates its specific claims under the False Claims Act, 31 U.S.C. § 3729, the Government's action arises generally under 31 U.S.C. §§ 3729-33. See Pls.'s Am. Joint Compl., (ECF No. 39). Because this suit is brought generally under the False Claims Act, § 3731(e) applies to the present case. For clarity, § 3730 allows the Government or a private citizen to bring a civil claim for violation of the Act and § 3729 sets out violations under the False Claims Act. 31 U.S.C. §§ 3729-30.

Supp. 2d 842 (E.D. Mich. 2005) (giving the defendant's prior criminal conviction full preclusive effect under the False Claims Act, even though defendant's conviction was on appeal with the Court of Appeals). The Virginia Fraud Against Taxpayers Act also contains a provision with almost identical language, which provides for this same preclusive effect.[8] To determine if both actions arise from the same transaction, this report examines the essential elements of the criminal charges and civil claims. See 31 U.S.C. § 3731(e).

Thomas pled guilty to health care fraud under 18 U.S.C. § 1347 – a charge that results from making fraudulent or false statements. Plea Agreement, (No. 4:13cr90 (ECF No. 7)). Section 1347 provides:

> (a) Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice—
>
>> (1) to defraud any health care benefit program; or
>>
>> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,
>>
>> in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both...
>
> (b) With respect to violations of this section, a person need not have actual knowledge of this section or specific intent to commit a violation of this section.

---

[8] The relevant Virginia code section provides that:
> ...
> Notwithstanding any other provision of law, a final judgment rendered in favor of the Commonwealth in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action that involves the same transaction as in the criminal proceeding and which is brought under § 8.01-216.4 or 8.01-216.5.

Va. Code Ann. § 8.01-216.9.

18 U.S.C. § 1347. The essential elements of Thomas's conviction – as detailed in her plea agreement and stipulated statement of facts – are as follows: (1) Thomas "knowingly and willfully, and not because of accident, mistake, or other innocent reason" executed a scheme to defraud Medicaid; (2) Thomas owned and operated New Season; (3) Thomas, acting on behalf of New Season, received payment from Medicaid for mental health counseling services; (4) Thomas submitted false and fraudulent pre-authorization documentation misrepresenting criteria and factors for Medicaid's eligibility standards; and (5) as a result of the false pre-authorization documentation submitted for sixty-six Medicaid recipients, Thomas received $1,505,173.00 in health care benefits from Medicaid. (No. 4:13cr90 (ECF Nos. 7, 8)).

For the present civil claims, the essential elements are that Thomas "knowingly present[ed], or cause[d] to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A); see Va. Code Ann. § 8.01-216.3(A)(1), and that Thomas "knowingly ma[de], us[ed], or cause[d] to be made or used, a false record or statement material to a false or fraudulent claim," 31 U.S.C. § 3729(a)(1)(B); see Va. Code Ann. § 8.01-216.3(A)(2).

The facts, as stipulated by Thomas in her plea agreement, make clear that she admitted to the conduct that underlies this civil action. First, Thomas admitted that she acted "knowingly and willfully." (No. 4:13cr90 (ECF No. 8, at 1, 4)). Second, she admitted to submitting "false and fraudulent prior-authorization" documents to Medicaid for payment, and finally, she admitted that she "embellished, exaggerated, or wholly invented" criteria, which she included in her false claims. Id. at 3. These admissions satisfy the essential elements in the present civil action.

Applying the criteria for collateral estoppel under federal common law, Thomas's prior conviction has preclusive effect in the present case. First, the criminal and civil cases both

presented the same issue – Thomas's fraudulent claims to Medicaid. Second, the falsity of her statements and claims were central to the criminal charges, and third, the criminal case ended in Thomas's guilty plea after she had a full and fair opportunity to litigate.

Thomas is also precluded from denying liability in the present civil action under the False Claims Act's statutory requirements for estoppel. The civil claims against Thomas arise from the same transaction that underpinned Thomas's criminal conviction – namely, her misrepresentation of Medicaid-funded services for sixty-six Medicaid recipients. Because the present action involves the same transaction as her prior conviction, under § 3731(e), Thomas is estopped from denying the essential elements of the civil claims. The effect of this preclusion is that Thomas cannot deny making false claims and statements, and cannot deny liability under 31 U.S.C. § 3729(a)(1)(A) and (B). Accordingly, the undersigned concludes that Thomas's prior conviction is entitled to preclusive effect and recommends that the court grant Plaintiffs' motion for summary judgment on liability.

C. **There Are No Genuine Disputes of Material Fact Regarding Treble Damages.**

Under 31 U.S.C. § 3729(a)(1), a person who violates the False Claims Act is liable for "3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729. The Virginia Fraud Against Taxpayers Act allows for damages identical to those set forth in the False Claims Act.[9] The Government argues that it sustained damages in the amount of $1,505,173.00, resulting from Thomas's false claims for sixty-six Medicaid recipients, and is therefore entitled to damages in the amount of $1,505,173.00, trebled – which equals damages of $4,515,519.00. (ECF No. 46). Thomas argues that the Government must prove their

---

[9] The relevant section of the Virginia Fraud Taxpayers Act states that any person who violates the Act will be liable for "three times the amount of damages sustained by the Commonwealth." Va. Code Ann. § 8.01-216.3(a).

damages, and therefore, asks the court to hold a hearing to determine the amount of damages, civil penalties, costs, attorney's fees, and possible offsets for restitution paid. (ECF No. 47).

In False Claims Act cases that involve the government's receipt of items with an ascertainable value, the U.S. Supreme Court has held that damages should be "equal to the difference between the market value of the [items] it received and retained and the market value that the [item] would have had if they had been of the specified quality." United States v. Bornstein, 423 U.S. 303, 317 & n.13. In cases, such as the present case, in which the fraudulent conduct does not involve the government's receipt of tangible items, but instead involves money paid out to the defendant, the value of damages is the amount paid to the defendant. See, e.g., United States ex rel. Longhi v. United States, 575 F.3d 458 (5th Cir. 2009); Karron, 750 F. Supp. 2d at 492-93; Eghbal, 475 F. Supp. 2d at 1016-19. Under the language of the False Claims Act and the Virginia Fraud Against Taxpayer's Act, a violation results in treble damages, calculated as three times the "amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a)(1); see Va. Code Ann. § 8.01-216.3 ("[L]iable [for] ... three times the amount of damages sustained by the Commonwealth.").

Although Thomas does not dispute liability under the False Claims Act, she argues that the court should hold a hearing to determine the amount of damages to be imposed. The language of 31 U.S.C. § 3721(a)(1) does not require the court to hold a hearing to determine damages and penalties. See 31 U.S.C. § 3721(a)(1). Instead, if the defendant's liability is established, the defendant is liable for treble damages without any additional proof or evidence. See id.

As set forth in her statement of facts, Thomas fraudulently received $1,505,173.00 from Medicaid – the "damages which the Government sustain[ed]" – and she is therefore liable for

three times this amount, totaling $4,515,519.00.[10] Accordingly, the undersigned recommends that the court grant the Government's motion for summary judgment on damages and conclude that the proper damage award is three times $1,505,173.00 – equal to $4,515,519.00.

### D. Thomas May Be Liable for Civil Penalties.

Under 31 U.S.C. § 3729(a)(1), the Government may be entitled to civil penalties per claim "of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990." 31 U.S.C. § 3729(a)(1). The Government asks the court to assess "such civil penalties as the Court might deem appropriate," but does not specify the specific amount sought. (ECF No. 46). Thomas asserts that any civil penalties should be determined at the hearing she requests regarding damages. (ECF No. 47).

When calculating civil penalties under the False Claims Act, courts multiply the number of false claims by the statutory penalty imposed, resulting in an amount equal to the number of claims multiplied by at least $5,000, but not more than $10,000. See, e.g., United States v. Aleff, 772 F.3d 508, 511-12 (8th Cir. 2014). But see United States v. Cabrera-Diaz, 106 F. Supp. 2d 234, 239-42 (D. P.R. 2000) (finding the imposition of civil penalties for all 455 false claims, as well as treble damages, to be excessive). Any award of civil penalties is constrained by the Excessive Fines Clause of the Eighth Amendment. Under the Excessive Fines Clause, "[t]he touchstone of the constitutional inquiry ... is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that is designed to punish." United States ex rel. Bunk v. Gosselin World Wide Moving, N.V., 741 F.3d 390, 408 (4th Cir. 2013) (quoting United States v. Bajakajian, 524 U.S. 321, 334 (1998)). When assessing whether

---

[10] In calculating the total damages owed in False Claims Act cases, some courts have subtracted the amount paid in criminal restitution from the civil damages owed. See, e.g., Bornstein, 423 U.S. at 314-17; United States v. Barnette, 10 F.3d 1553 (11th Cir. 1994); Karron, 750 F. Supp. 2d at 491-93. Such a subtraction is within the discretion of the court and would result in damages of $4,515,519.00 less the criminal restitution of $1,505,173.00.

13

civil penalties under the False Claims Act violate the Excessive Fines Clause, "the award's deterrent effect on the defendant and on others perhaps contemplating a related course of fraudulent conduct" must be considered. Id. at 409. Generally, when an award of civil penalties is less than the statutory maximum, the award will be upheld. See Eghbal, 475 F. Supp. 2d at 1017.

In the present case, the Government's civil complaint alleges that Thomas and New Season fraudulently submitted 2,669 claim forms for sixty-six Medicaid recipients. (ECF No. 39, at 9). Thomas stipulated in her plea agreement that she submitted "false and fraudulent prior-authorizations for 66 Medicaid recipients," however, neither the plea agreement, nor the statement of facts, specifies the number of false claims she filed. See (No. 4:13cr90 (ECF No. 8)). Because Plaintiffs use Thomas's plea agreement admissions as the basis for her liability in the present civil case, her admissions must correspond to the remedies sought in this suit. Thomas admitted to submitting false documentation for sixty-six Medicaid recipients, but she did not stipulate to the total number of false claims she submitted on behalf of the sixty-six recipients. See id. Based on the lack of evidence regarding the number of false claims Thomas submitted, and the amount of civil penalties sought by the Government, the undersigned recommends that the court reserve ruling on an award of civil damages and direct the Government to request an evidentiary hearing if it continues to seek civil damages.

### III. RECOMMENDATION

For the reasons set forth above, the undersigned recommends that the court GRANT IN PART Plaintiffs' Motion for Summary Judgment against Thomas and New Season, (ECF No. 45), AWARD damages in the amount of $1,505,173.00, trebled, totaling $4,515,519.00, DIRECT the Government to clarify its position regarding civil penalties by requesting a hearing

if it intends to persist in its claims for civil penalties, and DISMISS the remainder of the case against the unnamed Jane Does numbers 1-99.

### IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/ Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
October 26, 2015